UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN WILSON and ERICKA BLAKEMORE, | ) ) ) No. 1:24-CV-13271 |
| Plaintiffs, | ) ) ) |
| v. | ) Judge Edmond E. Chang ) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiffs Brian Wilson and Ericka Blakemore are business consultants who have provided services to the Chicago Public Schools (CPS) for over a decade. R. 1, Compl. ¶ 6.[1] The Plaintiffs have sued the Chicago Board of Education for allegedly enforcing new procedures with the intention of discriminating against them on account of their race, in violation of 42 U.S.C. § 1981, and for violating due process and breaching contractual obligations. Compl. ¶¶ 20–40. The Board moves to dismiss the claims, arguing that (1) the Board, as a unit of local government, cannot be sued under 42 U.S.C. § 1981; (2) that the Plaintiffs failed to plead a protected property interest for the procedural due process claim; (3) the Illinois Local Government and Governmental Employees Tort Immunity Act bars liability of the promissory estoppel claim, and (4) CPS and the Board are legally the same entity and thus cannot have

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This court has federal-question jurisdiction over the § 1981 claim under 28 U.S.C. § 1331. Supplemental jurisdiction over the state law claims is discussed in Section III.C, *infra*.

tortiously interfered with its own business relationship. R. 8, Defs.' Mot; R. 9, Defs.' Br. For the reasons explained in this Opinion, the motion is granted as to the federal claims, though the dismissal is without prejudice for now.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 558 U.S. 662, 678 (2009). Wilson and Blakemore provided business-consulting services to CPS for over 10 years. Compl. ¶ 6. Neither Wilson nor Blakemore was an employee of CPS; instead, they both were vendors who contracted with CPS through its procurement process. *See id.* ¶¶ 8–9.

On June 28, 2024, Wilson and Blakemore received an email from CPS informing them of the implementation of a new policy that required them to join a "vendor pool" to continue contracting with CPS. Compl. ¶ 7. When Wilson and Blakemore asked for clarification on the new policy, a Chicago Public Schools official, Karen Pearson, directed the Plaintiffs to Board Rule 7-11, which was entitled Strategic Sourcing, as well as to the "Procurement Policies around the use of vendors for Financial Services." *Id.* ¶¶ 9–10. The Plaintiffs also were informed that if they did not comply with the new policy, then their vendor numbers would be deactivated by the end of the current fiscal year—which concluded only two days after the June 28, 2024, notice to Plaintiffs. *Id.* ¶¶ 8–11. Wilson and Blakemore allege that they were unable to complete the necessary steps to enter the vendor pool before the end of the fiscal

2

year on June 30, and that they were then barred from continuing to contract with CPS. *Id.* ¶¶ 11–13.

Frustrated with the loss of their contract, Wilson and Blakemore sued the Board, bringing several federal and state law claims. First, the Plaintiffs allege that the Board intentionally implemented the new vendor-pool policy with the purpose of discriminating against them because of their race. Compl. ¶ 16. In support, the Plaintiffs allege that similarly situated vendors who were not African American did not have their vendor numbers deactivated for failing to comply with the new policy. *Id.* ¶ 17. Second, Wilson and Blakemore allege that the short notice provided to them to enter the vendor pool deprived them of procedural due process. *Id.* ¶¶ 33–36. Moving on to state law claims, Wilson and Blakemore assert that the Board, through its school principals, made clear and unambiguous promises to continue its business relationship with the Plaintiffs. *Id.* ¶¶ 27–31. Finally, the Plaintiffs allege that the Board intentionally interfered with their prospective economic relationship by deliberately implementing the racially discriminatory policy. *Id.* ¶¶ 38–40.

The Board now moves to dismiss the Complaint, arguing that (1) as a unit of local government, it cannot be sued under 42 U.S.C. § 1981; (2) the Plaintiffs fail to allege a property interest protected by the Due Process Clause; (3) the Board is immune from promissory estoppel claims under the Illinois Tort Immunity Act, 745 ILCS § 10/2-106; and (4) the Board cannot tortiously interfere with its own business relationships. Defs.' Br. at 2–7.

3

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

## III. Analysis

### A. Section 1981

The Board asks this Court to dismiss the race-discrimination claim brought under 42 U.S.C. § 1981, arguing that, as a unit of local government, it cannot be sued under Section 1981. Defs.' Br. at 2. Section 1981 prohibits "racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007). But this statute "does not create a private right of action against state actors," which instead must be sued under 42 U.S.C. § 1983. *Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014). Though the Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories or to engaged in "code pleading," the complaint must "give the defendant fair notice of the claim for relief and show the claim has substantive plausibility." *Runnion ex. Rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015)(cleaned up).

Wilson and Blakemore allege in their Complaint that the Board violated Section 1981—not 42 U.S.C. § 1983—by implementing the new vendor-pool policy with the intent to discriminate against them because of their race. Compl. ¶¶ 1–2, 21–25. By specifically alleging that the Board violated Section 1981, the Plaintiffs did not put the Board on notice about a potential Section 1983 claim. Wilson and Blakemore attempt to salvage their omission by arguing that "the § 1981 claims merge into the § 1983 claims." R. 12, Pls.' Resp. at 2. But the Plaintiffs cannot amend the Complaint via their response brief when the Complaint's allegations are insufficient. *See*

5

*Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss …."). And, contrary to the Plaintiffs' argument that Section 1981 and Section 1983 claims "merge," Pl.'s Resp. at 2, the Supreme Court has definitively held that, when it comes to suits against municipalities, Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).

It is odd that the conferral process over the dismissal motion—which presumably happened before the filing of it—did not result in a more efficient path forward. The parties could have agreed to treat the Complaint's reference to Section 1981 as referring to Section 1983 and then briefed the dispute under Section 1983. In any event, "in both civil and criminal cases, … we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (cleaned up). Because Section 1981 does not create a private right of action against municipalities, this claims fails. But the Plaintiffs will have the chance to file an amended complaint with a Section 1983 claim.

### B. Procedural Due Process

Next, the Board argues that Wilson and Blakemore's procedural due process claim should be dismissed because the Plaintiffs do not allege a constitutionally protected property interest. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S.

6

Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up). To state a claim for violation of procedural due process, Wilson and Blakemore must allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

Wilson and Blakemore allege that they had a constitutionally protected property interest in their business relationship with Chicago Public Schools and that their property interest was deprived without sufficient procedural due process when the Board implemented the new vendor-pool policy. Compl. ¶¶ 33–36. When a plaintiff alleges that a property interest has been deprived without due process, "the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). The federal Constitution does not by itself create property rights under the Due Process Clause. Instead, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571–72. Indeed, if a person alleges that they have a property interest in something intangible, like a benefit, then the person must clearly allege "more than an abstract need or desire for it. He must have more

7

than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.

Wilson and Blakemore allege that they possessed a cognizable property interest in their "long-standing relationship with CPS and the consistent annual renewal of their vendor statuses for over ten years," which "create[d] an implied contract and a legitimate claim of entitlement to the renewal of their vendor statuses." Pls.' Resp. at 4. But those allegations do not amount to the deprivation of a *protected* interest. There are two reasons: First, Wilson and Blakemore do not cite to any authority that supports their proposition that Illinois confers a property interest in having or continuing the ability to bid on contracts with a municipality. Nor can they because Illinois does not confer such a right. In *Polyvend, Inc. v. Puckorius*, the Supreme Court of Illinois rejected that there is a general right to have the opportunity to bid on contracts with the government:

> Plaintiff argues that the opportunity to contract for the sale of goods and services to the government is a legally protected property interest within the ambit of the due process clause and, therefore, cannot be eliminated without affording the would-be supplier minimal guarantees of procedural due process. With this contention, however, we disagree.

395 N.E.2d 1376, 1379 (Ill. 1979). Although the Illinois Supreme Court left open the possibility of a constitutionally protected property interest in participating in a *continuing* program that did not require a competitive bid, Wilson and Blakemore do not allege a continuous program like that. Instead, the Plaintiffs alleged that the new vendor-pool policy prevented them from continuing their contractual relationship

8

with CPS, Compl. ¶¶ 7, 13, 15, which had been renewed annually over the last 10 years. Pls.' Resp. at 4. But the renewal of a standalone contract for service by a government contractor does not create a property interest that is protected by the due process clause of the federal Constitution. *See Polyvend*, 395 N.E.2d at 1380–81.

Second, the Plaintiffs rightly conceded that when a government agency has the discretion to determine who may participate in a municipal program, then that discretion weighs against characterizing the right to participate as a constitutionally protected property interest. *See Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("A property interest of constitutional magnitude exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.") (cleaned up). But the Plaintiffs argue that the consistent renewal of their contractual relationship with CPS "indicate[s] a lack of discretion and a reasonable expectation of continued renewal." Pls.' Resp. at 5. But the Plaintiffs' unilateral expectation of continued renewal of their contractual relationship with CPS does not diminish the discretion of the Board in procurement matters. *See Roth*, 408 U.S. at 577. Indeed, the Plaintiffs point to very little—other than the bare fact of renewals—that limits the Board's discretion to determine the rules, policies, and procedures that govern the procurement process for the Chicago Public School system. That type of discretion in procurement weights against finding a protected property interest. *See Kim Const. Co., Inc. v. Bd. of Trs. of Vill. of Mundelein*, 14 F.3d 1243, 1247–48 (7th Cir. 1994). The Plaintiffs allege no other facts from which to infer the existence of a constitutionally protected property interest or of a lack of discretion on

the part of the Board to deny Wilson and Blakemore from participating in the vendor pool. On the current allegations, Wilson and Blakemore's procedural due process claim fails. But the Court will give them a chance to replead the claim.

### C. State Law Claims

The Board argues that if this Court dismisses the federal claims (Counts 1 and 3), then this Court should also relinquish supplement jurisdiction over the state law claims (Counts 2 and 4). Defs.' Mot. at 5. For their part, Wilson and Blakemore have not argued one way or the other whether this Court should retain supplemental jurisdiction over the state law claims if the federal claims are dismissed. At this time, because the federal claims have been dismissed without prejudice to repleading, the Court need not address the state law claims. If the Plaintiffs choose to amend their complaint, they may include the state law claims again, and if the amended federal law claims survive, then the Court will address the state law claims. But if the Plaintiffs either do not file an amended complaint or they unsuccessfully replead federal claims, then the Court likely will relinquish supplemental jurisdiction over the state law claims at that point.

### IV. Conclusion

The Defendants' motion to dismiss the federal claims is granted, but the dismissal is without prejudice for now. The Plaintiffs may file an amended complaint, as discussed in the opinion, by August 13, 2025. If no amended complaint is filed,

then the dismissal of the federal claims will convert to a dismissal with prejudice and the Court will relinquish supplemental jurisdiction over the state law claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 30, 2025