**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN WILSON and ERICKA BLAKE-MORE, | |
| Plaintiffs, | No. 1:24-CV-13271 |
| v. | Judge Edmond E. Chang |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Brian Wilson and Ericka Blakemore provided business-consulting services to Chicago Public Schools for more than a decade. R. 23, First Am. Compl. ¶ 6.[1] After their vendor contract was terminated in 2024, they brought this suit alleging violations of their constitutional rights to due process and equal protection as well as of state law. *Id.* ¶¶ 8–9, 21–45. The Court previously dismissed their federal claims without prejudice for failure to state a claim. *Wilson v. Bd. of Educ. of Chi.*, 2025 WL 2160653 (N.D. Ill. July 30, 2025). The Plaintiffs have re-pleaded their claims, but the Board contends that the Plaintiffs still fail to state a claim and move to dismiss the amended complaint. R. 30, Def.'s Mot. For the reasons explained in this Opinion, the Court agrees, and the motion is granted as to the federal claims. The Court dismisses

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal-question jurisdiction over the Plaintiffs' constitutional claims. 28 U.S.C. § 1331.

the Plaintiffs' equal-protection theory without prejudice but dismisses their due-process theory with prejudice.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations the amended complaint and draws all reasonable inferences in the Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

For more than 10 years, the Plaintiffs, who are African Americans, provided business-consulting services to Chicago Public Schools and earned "recognition" for doing so. First Am. Compl. ¶¶ 4, 6. Each year, their services were "continuous and annually renewed," and the only requirements were proof of insurance and a supplier-attestation process. *Id.* ¶ 7. Their services were not subject to competitive bidding. *Id.*

In the Plaintiffs' view, they were abruptly told on June 28, 2024, of an additional requirement: that they must be a so-called strategic-source vendor. First Am. Compl. ¶ 8–11. With at most two days' notice, they had little (if any) time to comply with this new requirement by the June 30 deadline. *Id.* ¶¶ 8–9, 12–15. The Plaintiffs allege that "[Chicago Public Schools's] actions" were motivated by their race and that the new procurement policy was abruptly and discriminatorily enforced against them. *Id.* ¶ 17. They allege that other vendors who were not African American were not excluded from the vendor program despite similar non-compliance with the policy. *Id.* ¶ 18.

2

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Equal Protection

The Court starts with the Plaintiff's re-pleaded equal-protection theory. The Court previously held that the Plaintiffs did not have a private right of action under 42 U.S.C. § 1981 against the Board. *Wilson*, 2025 WL 2160653, at *3. The Plaintiffs now correctly bring their claim under 42 U.S.C. § 1983. First Am. Compl. ¶¶ 21–27. But the Board argues that the Plaintiffs' pleading suffers from another fatal defect: they fail to adequately allege that the municipality itself is liable. R. 29, Def.'s Br. at 3–4. That question turns on whether the Plaintiffs suffered a constitutional injury resulting from a custom or policy of the Board. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 694 (1978).

The Plaintiffs agree on the standard for municipal liability but insist that they have pleaded enough. R. 34, Pls.' Resp. at 6–9. In their view, their injuries for unconstitutional racial discrimination stem from the strategic-source policy, which is codified as a Board Rule for Chicago Public Schools. *Id.* at 7–9; CHI. PUB. SCHS. BD. R. § 7-11 (2023).

But the Plaintiffs' injuries were not caused by that policy. To state a valid claim for municipal liability under *Monell*, the Plaintiffs needed to allege that (1) the Board

4

executed or implemented "a policy statement, ordinance, regulation, or decision officially adopted and promulgated"; (2) the Board had an unofficial custom or practice; or (3) someone with final policymaking authority took the disputed actions. *Bradley v. Village of University Park*, 929 F.3d 875, 884 (7th Cir. 2019) (cleaned up); *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). But the Plaintiffs do not allege that the actual policy is discriminatory; rather, it was "the abrupt and discriminatory application" that penalized them but not other vendors. First Am. Compl. ¶ 17; *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (noting that *Monell* liability looks to "*content* of an official policy" (emphasis added)). The Plaintiffs plainly do not allege that the actual requirement to be a strategic source, standing alone, was discriminatory.

Still, the Plaintiffs could adequately allege *Monell* liability another way if they claimed that the abrupt and discriminatory application was done by someone with final policymaking authority. But based on the current pleadings, the Plaintiffs have not done that. At various points, the Plaintiffs allege that Chicago Public Schools notified them of the new requirement; that someone named Karen Waters Pearson, who appears to be a "Senior Category Buyer," Pls.' Resp. at 15, provided clarification; that Chicago Public Schools's actions were discriminatory; and that school principals made promises to them. *See, e.g.*, First Am. Compl. ¶¶ 8, 11, 26, 29. (And as it pertains to their due-process claim, the Plaintiffs similarly assert that the policy change "should be considered the Board's own violation." *Id.* ¶ 40.) But none of this is a concrete factual allegation that someone with final policymaking authority—such as the

5

*Board itself* or someone who was legally delegated that authority, *see Duda v. Bd. of Educ.*, 133 F.3d 1054, 1061 (7th Cir. 1998) (principals lack delegated authority); *see also* CHI. PUB. SCHS. BD. R. § 7-13—was responsible for the allegedly discriminatory enforcement of the strategic-source policy.

In their response to the Board's motion, the Plaintiffs clarify that it was the Board that disseminated the change. Pls.' Resp. at 7. The Plaintiffs still do not explain, via that conclusory allegation, whether it was also the Board that deactivated their vendor status while not doing so for others. But even if this new detail alone were enough, the Court declines to permit the Plaintiffs to constructively amend their complaint, which lacks this specificity, via their brief. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). Because the Plaintiffs may be able to re-plead their equal-protection theory, the dismissal is again without prejudice.

To facilitate progress in this case, the Court makes two observations on the merits of the Plaintiffs' claim. First, the Plaintiffs are not clear whether they allege that the Board's actions subjected them to discriminatory treatment or merely an impact. *Compare* First Am. Compl. ¶ 17, *with id.* ¶ 25. That difference is significant, *see Freeman v. Metro. Water Reclamation Dist.*, 927 F.3d 961, 966 (7th Cir. 2019), in no small part because an action that has a disparate impact standing alone does not violate the equal-protection clause, *Bond v. Atkinson*, 728 F.3d 690, 692–93 (7th Cir. 2013) (citing generally *Washington v. Davis*, 426 U.S. 229 (1976)).

Second, the extent of the Plaintiffs' discrimination allegations is thin. It is true that the pleading standard is not high, and that there is no heightened-pleading

requirement for § 1983 cases. *Freeman*, 927 F.3d at 965. But the Amended Complaint's few allegations about racial discrimination are little more than legal conclusions. The Plaintiffs state only that "[Chicago Public Schools's] actions were racially motivated and … specifically targeted African Americans, including Plaintiffs due to their race" and that "[s]imilarly situated vendors, who were not African American, did not have their vendor numbers deactivated." First Am. Compl. ¶¶ 17–18. But such a "single statement" amounts to an "unsupported legal conclusion" that does not overcome even the low pleading hurdle. *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). The Plaintiffs need not proffer any specific evidence, but they need at least to plead *factual* allegations that give rise to a plausible inference that their race was the *reason* their contracts were not renewed. For example, it is not possible to tell whether those vendors who are not African American were notified earlier (allegedly on the basis of their race) or whether those vendors also failed to comply yet were not deactivated (allegedly on the basis of their race). The Court underscores that notice pleading does not require much, but unlike in the employment context, where there is more familiarity with these claims and investigations, *see Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014), this vendor-contract dispute requires more.

### B. Due Process

Next, the Court addresses the Plaintiffs' due-process theory. Previously, the Court concluded that the Plaintiffs failed to allege that they had a constitutionally protected property interest, which is the threshold question. *Wilson*, 2025 WL

2160653, at *3–4. In their Amended Complaint, the Plaintiffs now clarify that their service contracts, which were not subject to a competitive-bidding process, were renewed annually and dependent on only two requirements that they contend are not in question. First Am. Compl. ¶ 7.

But these allegations still fail to state a claim because there is no protected property interest. The Plaintiffs initially contend that the Board lacked discretion, which would support finding that there is a protected property interest, because the Board's procurement manual requires the choice of the "lowest, responsive, responsible bidder." First Am. Compl. ¶ 38. The Plaintiffs abandon this argument in their brief, and for good reason: that requirement applies only when *bidding* occurs. 105 ILCS 5/10-20.21. Not only does the statute foreclose the same limitation on discretion for "contracts for the services of individuals possessing a high degree of professional skill" like the Plaintiffs, *id.* 5/10-20.21(a)(i), but the Plaintiffs also acknowledge that their services were "non-biddable," First Am. Compl. ¶ 39.

The Plaintiffs advance two more theories why they have adequately alleged a threshold protected property interest. They argue that, because the Board regularly renewed their contracts without the additional strategic-source requirement, a protected property interest may be inferred from this limitation over time on discretion. Pls.' Resp. at 11. They also contend that Illinois law recognizes a protected property interest directly from the fact of an annually renewed contract that is part of a "continuous program." *Id.* at 10–11 (citing *Bio-Med. Lab'ys, Inc. v. Trainor*, 370 N.E.2d 223, 226 (Ill. 1977)).

But these attempts also fail to state a claim for a procedural-due-process violation. Both theories rely on the premise that the Board lacked authority to enforce the strategic-source requirement. *See, e.g.*, *Bio-Med. Lab'ys*, 370 N.E.2d at 229 (holding that the legislature did not grant defendant the statutory authority claimed); *id.* at 226 (citing *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964) (focusing on "absence of legal authority"); *Hathaway v. Mathews*, 546 F.2d 227, 230 (7th Cir. 1976) (citing legal authority limiting discretion)). But the Board has that authority: the Plaintiffs concede that the strategic-source requirement is codified as a Board Rule. Pls.' Resp. at 7; CHI. PUB. SCHS. BD. R. § 7-11. So rather than *limiting* the Board's discretion, the Board Rules permit (if not require) enforcement of the strategic-source policy. And even if the Board's discretion is otherwise limited, the strategic-source policy is one of the "specific conditions" that drives the Board's procurement. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (cleaned up).

The Court previously observed the possibility that a protected property interest may exist for a "*continuing* program that did not require a competitive bid." *Wilson*, 2025 WL 2160653, at *4 (emphasis in original) (citing *Polyvend, Inc. v. Puckorious*, 395 N.E.2d 1376, 1379–81 (Ill. 1979)). Perhaps unsurprisingly, the Plaintiffs now allege that their services were "continuous" and "not subsequent to competitive bids." First Am. Compl. ¶ 7. Initially, the Plaintiffs' allegations merely "parrot" the legally relevant factors and omit any "specific facts to ground those legal claims." *Brooks*, 578 F.3d at 581. In any event, the Plaintiffs' annually renewed contract may have reflected an ongoing relationship or provision of services, but the relevant question is

9

whether the Plaintiffs participated in a "continuous *program.*" *Polyvend*, 395 N.E.2d at 1380–81. A years-long business relationship, that needed to be renewed every year, is not the "ongoing program" itself, *id.*, and the Plaintiffs provide no factual detail about any such program.

The Plaintiffs do not articulate their theory as being grounded in cases that have found an implied or unwritten legitimate expectation. *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972). They thus have waived it. *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to parties.").

But even if the Plaintiffs made this argument (and assuming it applies in the vendor context), the Court would reject it. A "common law property interest" might arise from "unwritten mutually explicit understandings or legitimate and reasonable reliance on a promise from the government." *Forgue v. City of Chicago*, 873 F.3d 962, 970 (7th Cir. 2017) (cleaned up). But these understandings "cannot be based on the representations of government officials who are not authorized to make such representations." *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir. 1989). So for a similar reason the Plaintiffs fail to allege *Monell* liability for either constitutional claim, they fail to show a promise from someone authorized to do so. And implied contracts also do not exist where "regulations or statutes *completely* nullify the validity" of the alleged property interest, *Hannon v. Turnage*, 892 F.2d 653, 658 (7th Cir. 1990) (emphasis added), as Board Rule § 7-11 appears to do.

10

Across two motions to dismiss, the Plaintiffs pressed the same arguments. They argued neither that they met the requirements of Board Rule § 7-11 nor that they have been, can be, or should be exempt from it. They instead have focused on the same argument: that "the bare fact of renewals … limits the Board's discretion." *Wilson*, 2025 WL 2160653, at *4. Because the Plaintiffs have not added facts that suggest another opportunity to amend their due-process claim could be fruitful, the Court now dismisses it with prejudice.

As with the Court's last decision, *Wilson*, 2025 WL 2160653, at *4, the Court does not address the Plaintiffs' state law claims. If the Plaintiffs choose again to amend their complaint to re-plead their equal-protection claim, then they may again include the state law claims. If the amended equal-protection claim survives, then the Court will address the state law claims; otherwise, the Court likely will relinquish supplemental jurisdiction over the state law claims.

## IV. Conclusion

The Board's motion to dismiss the federal claims, R. 30, is granted, but the dismissal of the equal-protection claim is without prejudice for now. The Plaintiffs may file an amended complaint on or before August 17, 2026. If no amended complaint is filed, then the dismissal of the remaining federal claim also will convert to a

dismissal with prejudice, and the Court will relinquish supplemental jurisdiction over the state law claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 3, 2026

12